# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHELTER DISTRIBUTION, INC.,

        *Plaintiff*,

vs.

        Case No. 08-2483-EFM

FAITH ROOFING COMPANY, INC.
and BRENT BOMAN,

        *Defendants*.

## MEMORANDUM AND ORDER

In April 2006, Plaintiff, Shelter Distribution, Inc. (Shelter), and Defendant, Faith Roofing Company, Inc. (Faith), entered into an agreement which allowed Faith to purchase construction materials from Shelter on an open credit account. This agreement permitted Faith to make purchases on credit without requiring immediate payment. The parties continued this business relationship for about two years. Toward the end of this relationship, however, disputes arose between Shelter and Faith as to the adequacy of certain invoices and the overall balance on Faith's credit account. On October 2, 2008, Shelter filed a Complaint against Faith alleging breach of contract, quantum meruit, and a violation of Kansas' Fairness in Private Construction Contract Act.[1] In its Complaint,

---

[1] *See* KAN. STAT. ANN. § 16-1801 *et seq*. Although Shelter refers to this act as the "Prompt Payment Act," the Court refers to it by its title as set forth in K.S.A. § 16-1801(a). The Act provides that "all persons who enter into a contract for private construction . . . shall make all payments pursuant to the terms of the contract." By failing to make required payments, the owner shall pay interest on the unpaid amount at the rate of 18% per annum and shall also pay for reasonable attorneys' fees.

Shelter alleged that it had provided Faith with materials and equipment totaling $523,648.63, of which Faith has only paid $400,036.53. Shelter also included a claim against Defendant Brent Boman based on his personal guaranty of the account. Defendants filed counterclaims against Shelter alleging breach of contract, negligent misrepresentation, and quantum meruit, and contends that Faith currently has a positive credit balance of approximately $80,000. Defendants' counterclaims are not before the Court for summary judgment at this time. Shelter moves for summary judgment on the unpaid amount of $123,612.10. For the following reasons, we deny Shelter's motion for partial summary judgment.

## I. Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[3] A fact is "material" when "it is essential to the proper disposition of the claim."[4] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[6] In attempting to meet this standard, the moving party need not disprove the

---

[2]Fed. R. Civ. P. 56(c).

[3]*Haynes v. Level 3 Commc'ns, L.L.C.*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4]*Id.*

[5]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[7]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[8] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[10] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[11] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[12]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

---

[7]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[8]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[10]*Adler*, 144 F.3d at 671.

[11]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[12]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## II. Analysis

Faith claims that its payments were made on an open credit account and not toward any specific invoices. Therefore, Faith asserts that the payments it made to Shelter were meant to be general payments and were not made in acceptance of any given invoice. On October 2, 2008, after allegedly failing to pay pursuant to contract terms, Shelter filed a Complaint against Faith and Boman, claiming a negative credit balance of $123,612.10 for seventy-one unpaid invoices.

Defendants responded to the Complaint by denying Shelter's allegations and asserting the affirmative defenses of accord and satisfaction, estoppel, failure of consideration, fraud, illegality, payment, and waiver. Defendants claimed that Shelter breached pricing agreements by charging amounts in excess of agreed to cost, applied incorrect tax rates and charges, failed to deliver shipments, applied inaccurate credit amounts, and duplicated billings. Defendants alleged that the resulting value of Shelter's breaches and misrepresentations created a positive credit balance in Faith's favor.

In the instant motion, Shelter asserts that Faith disputed only thirteen of the unpaid invoices listed in the complaint, thereby leaving fifty-eight invoices that were not in dispute. The fifty-eight undisputed invoices total $110,303.90. Accordingly, Shelter suggests that based on the undisputed invoices, it is entitled to partial summary judgment for this amount.

Defendants, however, disagree, and assert that summary judgment would be inappropriate because of multiple, significant, genuine issues of material fact in dispute. Mainly, Defendants dispute that there was a negative credit balance between Shelter and Faith. Defendants claim that payments made to Shelter resulted in a positive credit balance sufficient to cover all valid invoices, and that Shelter had inappropriately applied Faith's payments to false and inaccurate invoices.

Defendants further assert that while Faith had affirmatively challenged thirteen of the invoices, it has also challenged all of the other remaining invoices that Shelter alleges were unpaid. These disputes include Faiths claims that Shelter: (1) created duplicate invoices; (2) invoiced for materials that were created solely from pricing inquiries; (3) invoiced for materials that were never delivered; (4) applied incorrect tax charges; (5) incorrectly charged Faith's account; (6) applied incorrect prices; and (7) failed to properly credit Faith's account for both payments made and materials returned.

Shelter argues that the disputed facts were neither material nor genuine. First, Shelter argues that the dispute over incorrect tax charges is not material. Shelter claims that such charges only amount to an approximately $400 dispute and stated it would reduce its overall request by that amount. Shelter further argues that the Defendants failed to produce sufficient evidence to controvert Shelter's evidence because Defendants relied solely on broad accusations that lacked specificity, and therefore, were insufficient to create a controverted issue of fact. Shelter contends that Faith's assertion that Shelter applied incorrect pricing and tax rates to certain invoices was only a mere allegation, and thus insufficient to create a genuine issue for trial. Next, Shelter adjusted its request for relief to only account for the invoices which Defendants did not adequately dispute. Shelter claims it eliminated the invoices from its request which Defendants claimed were never delivered. Shelter claimed that it would need additional discovery to prove said materials were in fact delivered. Thus, Shelter asserts that it modified its request to include the invoices that Defendants attempted to dispute solely through improper conclusory statements, and through a de minimus tax dispute. This change reduced the claim by $37,392.52. Therefore, Shelter modified its request for partial summary judgment to $72,911.38.

In response, Defendants continue to deny Shelter's allegations of unpaid invoices, and argue that genuine issues of material fact exist as to the current credit balance between Shelter and Faith. Defendants contend that their invoice denials contained specific, legally recognized reasons for disputing each and every invoice. Defendants argue that the required evidence was provided in affidavits and exhibits that support their claims concerning Shelter's improper billing methods. Defendants further contend that the ultimate issue is not whether Faith owes money on specific invoices, but instead, is a question concerning the overall credit balance between Faith and Shelter, and as a result, granting partial summary judgment allotting payments to Shelter based on individual invoices would be inappropriate.

Summary judgment is appropriate only when there is no genuine issue of material fact.[14] Shelter contends that Faith has a negative credit balance of approximately $110,000 and moves for partial summary judgment in relation to the undisputed claims in the amount of $72,911.38. Faith contends that it has a positive credit balance of approximately $80,000 and argues that it has disputed each and every invoice which Shelter claimed was unpaid. In moving for partial summary judgment, Shelter argues that Defendants failed to show specific facts that a genuine issue exists for trial. The Court disagrees. The underlying issue is whether there is a positive or negative credit balance between Shelter and Faith. Even if Shelter is correct in asserting that Faith is delinquent in some of its payments, a material issue of fact remains as to whether Faith has a positive or negative credit balance. The facts relating to Faith's current credit balance are essential for the proper disposition of the claim, and are such that a reasonable jury could resolve the issue in favor of either party.

---

[14] *Id.; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); Fed. R. Civ. P. 56(c).

The Defendants have provided specific facts showing a genuine issue for trial, referenced in affidavits and specific exhibits in a manner that shows the existence of genuine issues of material fact, making summary judgment inappropriate. While Shelter argues that Faith has fifty-eight unpaid invoices to which it is entitled payment, Defendants have provided evidence disputing each of the fifty-eight invoices sufficient to withstand summary judgment at this time. Defendants provided evidence indicating that Shelter may have issued multiple billings that pursued payment for materials for which Faith or the property owner had previously paid. Defendants also provided evidence in which they listed specific invoices for which Faith claims it did not order, and did not receive, the charged materials. Additionally, Defendants provided evidence showing that Faith may be entitled to rebates of approximately $15,000 from Shelter, thereby affecting the current credit balance between the parties. Because of these disputed invoices, a genuine issue of material fact exists as to the current credit balance between Shelter and Faith.

While Shelter contends that Defendants' broad assertions do not amount to any genuine issue of material fact, claims such as improper billing, inaccurate calculations, and failure to perform amount to sufficient factual disputes as to preclude an entry for partial summary judgment.[15] Furthermore, Defendants direct their claims to specific invoices and identify the factual basis for individual disputes, and as a result, have identified the existence of genuine issues of material fact so as to preclude the Court from granting partial summary judgment at this time. Therefore, Shelter's motion is denied.

---

[15]*See United States v. West Virginia*, 537 F. Supp. 388, 398 (S.D.W.Va. 1982).

Accordingly,

**IT IS THEREFORE ORDERED** that the Plaintiff Shelter Distribution, Inc.'s Motion for Partial Summary Judgment (Doc. 7) is hereby DENIED.

**IT IS SO ORDERED.**

Dated this 14th day of October, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE